Curtis W. Cannon,
Plaintiff,

*vs.*

Union Chemicals & Materials Corp., a Delaware corporation; Otto A. Cheska, Harry A. Clark, James H. Clark, Thomas B. Moses, D. L. Frawley, Stewart F. Hancock, John J. Harding, Gustave L. Levy, Mrs. H. Paul Nulligan, William B. Paul, Stephen Rooth and Richard L. Rosenthal, Directors of the Defendant Union Chemical & Materials Corp., Paul Kitch, Plateau Natural Gas Company, a Colorado corporation, Drillers Gas Company, a Kansas corporation, John D. Murchison and Clint Murchison, Jr., as partners doing business as Murchison Brothers,
Defendants.

*New Castle, July 17, 1958.*

*Howard L. Williams* and *William F. Lynch, II,* of Morris, James, Hitchens & Williams, Wilmington, for plaintiff.

*Richard F. Corroon,* of Berl, Potter & Anderson, Wilmington, for moving defendants.

SEITZ, Chancellor: Plaintiff, a stockholder of Union Chemicals & Materials Corporation ("Union"), a Delaware corporation, commenced this action, partly derivative in nature, against Union and certain non-resident individual defendants. Union was served and appeared.

On December 31, 1957, pursuant to court order, stock of Union owned by some defendants was effectively sequestered. This was done to implement the derivative causes of action. Shortly thereafter, a certified copy of an agreement of merger was duly recorded in Dela-

ware, by which Union and Lambert Bros., Inc., another Delaware corporation, merged into Vulcan Materials Company ("Vulcan"), a New Jersey corporation. The agreement of merger was also filed in New Jersey on the same day.

Certain of the individual defendants whose stock was sequestered ("defendants") have moved to dismiss the complaint. This is the decision thereon.

I emphasize that defendants concede that the original sequestration was effective. Defendants say that as a matter of law the merger of Union into Vulcan, the New Jersey corporation, converted all of Union's outstanding shares into Vulcan shares which thereafter had their situs outside of Delaware. Since, say defendants, there is nothing in the Delaware law "preserving" the seizure under the circumstances, it has been lost. Plaintiff argues to the contrary.

Unless the status of our statutory law may compel a conclusion to the contrary, I believe every effort should be made to construe our law as upholding the continuing vitality of the originally valid seizure. See 21 *C.J.S. Courts* § 93; compare 1 *Shinn on Attachment and Garnishment,* § 322. Otherwise, effective jurisdiction may be lost through extra-judicial action, a particularly undesirable consequence since such "power" may be in the hands of the very parties who are defendants.

I now consider the pertinent Delaware statutes. Our merger statute, so-called, has been in effect for many years. However, it was not until 1935, that it was broadened to permit a Delaware corporation to merge into a foreign corporation. 40 *Del.Laws, Chap.* 148, § 7. Also, prior to 1935, our statute provided for the status, rights, liabilities, etc. of the surviving corporation in the following words (now part of 8 *Del.C.* § 259(a)):

> "* * * but all rights of creditors and all liens upon any property of any of said constituent corporations shall be preserved unimpaired, and all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said result-

ing or surviving corporation, and may be enforced against it to
the same extent as if said debts, liabilities and duties had been
incurred or contracted by it."

At the oral argument defendants' counsel stated, in answer to a
question from the court, that in his opinion an effective sequestra-
tion of the stock of a non-surviving Delaware corporation would be
wiped out were such corporation merged even into another Delaware
corporation. Of course, he says it would be vacated, a fortiori, where
the surviving corporation is a non-Delaware corporation.

■ I do not believe that either contention is sound. Indeed, it
is rather startling to suggest that the vitality of liens created by at-
tachment or sequestration could be destroyed by the vote of stock-
holders. In any event, I believe the quoted language of 8 *Del.C.*
§ 259(a) would seem fairly applicable to a merger of a Delaware
corporation into a foreign corporation. The attachment or sequestra-
tion of defendants' Union stock, made it, in effect, subject to an
equitable lien. See 1 *Shinn on Attachment and Garnishment,* § 313.
Or it might be said that Union had a duty [1] to preserve the effective
seizure. However characterized, I believe it was preserved as against
the surviving corporation under 8 *Del.C.* § 259(a). It may be noted
that the substance of the saving clause (8 *Del.C.* § 259(a)) is also
found in Article VIII of the Merger Agreement.

■ Thus, when Union converted the seized stock into stock
of the New Jersey corporation under the terms of the merger, it did
so subject to the effective seizure which existed prior thereto. Other-
wise stated, I am satisfied that under the Delaware merger statutes, the
stock seizure was not lost because Union merged into a New Jersey
corporation. Rather the right became appended to the equivalent

---

1. In *Federal United Corp. v. Havender,* 24 *Del.Ch.* 318, 11 *A.2d* 331, the
court said the duties, etc., portion of the statute was not applicable as between
a stockholder and the corporation. However, we are not here concerned with
the duty of the corporation to its stockholder qua stockholder. It is merely a
coincidence that the stock seized is the stock of the corporation which is also
a defendant.

shares of the New Jersey corporation. This view is consistent with the conceded law relied upon by defendants that upon merger the constituent corporation's existence ceases. Also, it might be noted that under 8 *Del. C.* § 261, a pending action may be prosecuted as if a merger had not taken place. Incidentally, our problem does not involve a pending action against Union.

▇ Plaintiff points out that under our sequestration statute it is explicitly provided that "Any transfer or assignment of the property so seized after the seizure thereof shall be void * * *". 10 *Del.C.* § 366(c). Plaintiff seems to argue that if the merger purported to convert the sequestered shares of the Delaware corporation into unsequestered shares of the New Jersey corporation, it was void under our sequestration statute. I am unwilling to assume that the statute should be construed to mean that the existence of an effective sequestration would prevent the merger of a Delaware corporation with a foreign corporation. Consequently, I have assumed that the sequestration statute does not prevent the "conversion" even of the sequestered shares into shares of the New Jersey corporation. But, as indicated, I believe the converted shares are also subject to seizure, with all that is thereby implied under Delaware law. Full faith and credit is not involved because this aspect of the merger was subject to Delaware law and the New Jersey corporation is bound thereby.

▇ But defendants argue that New Jersey law governed after the merger. And they point out that it does not recognize the type of seizure here effectuated.

It is true that the seizure here involved would not be effective were it initiated under New Jersey law because their Act provides for the attachment of stock only by seizure or surrender of the certificates or effective service of an injunction upon the holder. But the answer to defendants' contention must be that the shares here involved were by operation of Delaware law converted into shares of the New Jersey corporation with the lien or duty attached.

■ Since the Delaware courts can obtain jurisdiction over the New Jersey corporation in this matter under our merger statute, 8 *Del.C.* § 252(d), indeed, it has so submitted in Article VII of the Merger Agreement, it follows that the converted stock could be sold, if necessary, and new certificates issued the purchaser. If this possibility can be said to be inconsistent with New Jersey law then I think, as to the shares of the New Jersey corporation which represent the converted seized shares of the Delaware corporation, the Delaware law must control.

It follows that the motion of the defendants to vacate the seizure and dismiss the complaint will be denied. I assume that Vulcan can be said to have Union's notice of the sequestration and is therefore obligated to abide by this ruling. If not, it should be noticed by some process served in accordance with Article VII of the Merger Agreement.

Present order on notice.