WOODLANDS, LTD., et al.

v.

WESTWOOD INSURANCE COMPANY, LTD., et al.

Civil Action No. CCB–96–3158.

United States District Court, D. Maryland.

June 5, 1997.

J. Stephen Simms, Vincent J. Columbia, Jr., Greber & Simms, Baltimore, MD, for Plaintiffs.

M. Hamilton Whitman, Jr., H. Allen Black, III, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for Defendants.

## MEMORANDUM

BLAKE, District Judge.

The plaintiffs have filed suit against the defendant Westwood Insurance Company, Ltd. ("Westwood") to recover amounts allegedly due on an insurance policy for damage suffered by a cargo ship, the M/V Woodlands, owned by the plaintiffs. The plaintiffs attempted to give this court in personam jurisdiction over Westwood through an attachment of Westwood's bank account with NationsBank, N.A. ("NationsBank") under Supplemental Rule B for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"). Now pending are Westwood's motion to dismiss for lack of personal jurisdiction and motion to quash the order authorizing attachment and garnishment against NationsBank. This matter has been briefed fully, and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, Westwood's motions will be granted.

Westwood is a marine insurance company formed under the laws of Antigua. (*See*

**14**

Guidry Aff., Def.'s Mot. Dismiss Ex. 1.) Westwood is managed by Grace Worldwide Management Corporation ("Grace"), a corporation with its principal place of business in Charlottesville, Virginia. (*See id.*) Westwood conducts no business in Maryland and has no other contacts with this jurisdiction. (*See id.*) In Virginia, Westwood has one bank account with NationsBank that was opened and is maintained through the Charlottesville office of NationsBank. (*See* Amended Ans. of NationsBank, Def.'s Mot. Dismiss Ex. 2.)

▌ Because Westwood has no contacts with Maryland sufficient to give this court personal jurisdiction over Westwood, the plaintiffs have employed Rule B to obtain jurisdiction over Westwood. Rule B states,

> With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees to be named in the process to the amount sued for, if the defendant shall not be found within the district.

Fed.R.Civ.P., Supp. R. Certain Admiralty and Maritime Claims, Rule B(1). "The rule is a formal recognition of the common law principle that attachment of a defendant's property was often the only way to gain jurisdiction over an admiralty or maritime defendant." *Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F.Supp. 600, 603 (S.D.N.Y. 1997) (publication in Federal Supplement forthcoming). For Rule B attachment to be effective, the defendant must have property in the district that can be attached. *See id.* at 603. Thus, when the property sought to be attached is a bank account, "the bank account must be situated within the [district] to be subject to the jurisdiction of the district court." *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 52 (2d Cir.1965).

The plaintiffs contend that Westwood's bank account opened and maintained in Charlottesville, Virginia may be attached, and thus is situated, at any of NationsBank's branch offices including those found here in Maryland. Westwood argues that each branch of NationsBank is a separate entity and service upon a Maryland branch is insufficient to reach the funds at their location in a separate district, Virginia. The plaintiffs respond that this "separate entity" doctrine is no longer valid. In support of their position, the plaintiffs cite to several state cases and a nonmaritime case from a federal district court not involving Rule B.

▌ Because this is a question of admiralty law involving Rule B, however, federal law will decide the question. *See Reibor Int'l Ltd. v. Cargo Carriers (KACZ–CO.) Ltd.*, 759 F.2d 262, 265 (2d Cir.1985) ("Federal law generally governs questions as to the validity of Rule B attachments."); *Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307, 321 (2d Cir.1970) ("State law is irrelevant to the validity of process under Supplemental Rule B(1)."); *Det Bergenske*, 341 F.2d at 52. Federal admiralty law holds that a party may not obtain quasi in rem jurisdiction over another party through service on a branch of a bank found in a district other than the district where the bank account is maintained. *See Det Bergenske*, 341 F.2d at 53–54 ("We hold, therefore, that a[n] ... [order of] attachment [issued under Rule B], served on a branch office located in the Eastern District of New York, is ineffective to garnishee a bank account at a branch office of the same bank located in the Southern District of New York."); *see also Limonium*, 961 F.Supp. at 603–04 (upholding separate entity doctrine, service on New York branch was insufficient to attach funds deposited at a branch in Scotland). The decision in *Digitrex, Inc. v. Johnson*, 491 F.Supp. 66 (S.D.N.Y.1980), is not to the contrary. In *Digitrex*, the court held that service upon the main office of a bank was sufficient to attach a bank account opened and maintained at a branch within the same district. *See id.* at 69.[1] Thus, under the rule in *Det Bergenske*, the attachment served on a branch of NationsBank located in the District of Maryland is ineffec-

---

1. Moreover, *Digitrex* was decided under New York law and thus, has limited relevance in an admiralty case filed in Maryland.

tive to attach Westwood's bank account maintained in the District of Virginia.

The court does note, however, that some district courts have interpreted the federal admiralty rule announced in *Det Bergenske* in a less definitive manner. To arrive at its decision, the court in *Det Bergenske,* as a matter of federal law, looked to state law to determine whether the separate bank branches should be deemed separate entities. 341 F.2d at 52–53. The court explained that it looked to state law for two reasons: 1) a decision contrary to the general state rule could have had "disruptive consequences for the state banking system"; and 2) no established admiralty rule existed. *See id.* Arguably, after the *Det Bergenske* case was decided, federal admiralty precedent came into existence. Nonetheless, relying on the first reason stated by the *Det Bergenske* court for following state law, district courts have interpreted the *Det Bergenske* decision as requiring federal courts to look to the law of the forum state to determine where a bank account may be found for an attempted Rule B attachment. *See Engineering Equip., Co. v. S.S. Selene,* 446 F.Supp. 706, 709 n. 5 (S.D.N.Y.1978) ("Under Rule B(1), the situs of a debt is determined according to federal law. As a matter of federal law, however, we defer to the law of the forum state on this question."); *Shinto Shipping Co. v. Fibrex & Shipping Co.,* 425 F.Supp. 1088, 1091 (N.D.Cal.1976) ("I therefore hold that the legal efficacy of serving one bank office or branch with attachment process to reach accounts carried at other branches or offices, whether the banking operation be intrastate or interstate in character, is to be determined by reference to the law of the state in which process issues."), *aff'd,* 572 F.2d 1328 (9th Cir.1978).

Even assuming this is the correct approach, however, the result would be the same. The plaintiffs have cited no Maryland decisions holding that service upon a branch located in a district separate from the one in which the account is maintained is sufficient to attach the account in the separate district, nor has the court located such a decision in its own research. The Maryland Court of Appeals has held that branches of a bank are to be regarded as separate and distinct entities. *See Dean v. Eastern Shore Trust Co.,* 159 Md. 213, 150 A. 797, 799 (1930). More recently, the Maryland legislature adopted a new provision for Maryland's Commercial Law Article which states,

Separate office of a bank.

A branch or separate office of a bank is a separate bank for the purpose of computing the time within which and determining the place at or to which action may be taken or notices or orders must be given under this title and under Title 3.

Md.Code Ann., Com. Law I § 4–107 (1997). Thus, it appears that Maryland treats its bank branches as separate entities and would not find service on a branch bank in Maryland sufficient to attach an account maintained in Virginia. Accordingly, because under either interpretation of the *Det Bergenske* decision service on a Maryland NationsBank branch is insufficient to attach a Virginia NationsBank account, and because the plaintiffs have suggested no other possibilities for finding that this court has jurisdiction over Westwood, Westwood's motion to dismiss will be granted, and Westwood's motion to quash the court's order authorizing attachment of Westwood's NationsBank account also will be granted. A separate order follows.

### *ORDER*

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. the defendant Westwood's motion to dismiss for lack of personal jurisdiction is GRANTED;

2. the defendant Westwood's motion to quash the court's order authorizing garnishment and attachment is GRANTED;

3. the clerk shall mail copies of the accompanying Memorandum and this Order to all parties; and

4. the clerk shall CLOSE this case.